## In re JAYBAR REALTY CORPORATION.
### No. 36726.

District Court, E. D. New York.
Jan. 15, 1942.

40

Edward M. Sills, of New York City, for William E. Lahey, appearing specially herein for the motion.

Sydney Cutler, of New York City, for Trustee, opposed.

CAMPBELL, District Judge.

This is a hearing on a petition by William E. Lahey to review, and for an order adjudging erroneous and void, on the ground that the Referee had no jurisdiction to make the same, so much of a certain order dated December 1, 1941, made by a Referee in Bankruptcy of this district, on the petition of the Trustee herein, as overrules the special appearance of said William E. Lahey adjudges the claim of William E. Lahey invalid and without foundation in law or in fact, and directs the Comptroller of the City of New York to pay a certain sewer assessment refund, claimed by said William E. Lahey, to the Trustee in bankruptcy, herein.

There is no substantial dispute as to the facts, which are as follows:

On December 24, 1935, a sewer assessment was levied by the City of New York upon the property involved.

On October 14, 1936, this property, with that assessment unpaid, was acquired by William E. Lahey, by deeds, subject to the same sewer assessment, and bearing United States Internal Revenue Stamps totaling $1. Less than two weeks after, and on October 26, 1936, the bankrupt entered into a contract with William E. Lahey for the purchase of the property, subject to taxes and assessments, for $21,125, payable $500 cash; $2,500 on delivery of the deed, and the balance by reducing the then existing mortgage to the difference between $18,125, and the total amount of taxes and assessments with interest and penalties, which were liens, to the date of closing. Title was closed on January 15, 1937, and the mortgage was reduced to $3,585, in accordance with the contract by deducting the unpaid taxes and assessments. On the same date an extension agreement was entered into between William E. Lahey, and the bankrupt, specifically providing that the non-payment of these taxes and assessments shall not be deemed to be a violation of the terms of the extension of the mortgage. On May 22, 1937, William E. Lahey's mortgage was paid in full and discharged.

In May, 1937, the bankrupt raised a building loan, secured by a mortgage on the property, and part of the advances was paid to the City to clean up all taxes and assessments with interest and penalties outstanding.

On June 29, 1937, Local Law No. 27, 1937, became effective. This reduced the particular assessment in question by 30%, and provided for the repayment by the City of such excess to "all persons who have paid or caused to be paid to the city of New York the assessment * * *." Section 3. Pursuant thereto the bankrupt applied for the refund by application received September 15, 1938, and the United Title and Mortgage Company filed a consent to payment of the refund to the bankrupt, stating that its payment of the taxes and assessments to the City had been "as agent for" the bankrupt. The City issued warrants to the bankrupt and a partial assignee totaling $801.80, and approved payment of $1,094.10, to another partial assignee.

These partial assignments, as well as other encumbrances, have since been discharged and vacated.

Thereafter, and in March, 1939, the petition in bankruptcy was filed herein. On January 4, 1940, the Trustee procured an order directing the City to turn over the sum of $296.90, which was then unassigned, but when Lahey, for the first time thereafter, made claim to refund, the City refused to comply.

The Trustee thereupon brought an application for an order directing the City to turn over the entire refund of $1,895.90. The City consented to the complete disposition of the matter by the Referee. William E. Lahey appeared by attorney, and at first, by affidavit sworn to November 1, 1941, requested that the Trustee's application be denied, and made a cross-application for order "directing the City of New York to turn over, deliver and forthwith pay to William E. Lahey, the sum of $1,895.90." Later he withdrew from this position, and filed a special notice of appearance contesting the summary jurisdiction of the bankruptcy court, together with a statement of adverse claim. His special appearance was overruled and his motion to dismiss the petition on the same grounds was denied.

William E. Lahey has now filed a petition to review setting forth eight specific allegations of error, relating to jurisdiction, the merits, and evidentiary matters.

At the close of the hearing the Referee rendered an oral opinion (Stenographer's Minutes, pp. 44–49), which I adopt, and would affirm on it, but for the fact that the matter has been more carefully and fully argued before me, citing what Counsel urge as authorities sustain their respective positions.

There seems to be no substantial dispute as to the facts, therefore, the issues involve only a question of law.

█ That being so, the bankruptcy court has summary jurisdiction. While, undoubtedly, a plenary suit would lie, such a suit is not absolutely necessary. In re R. & W. Skirt Co. et al., 2 Cir., 222 F. 256.

When the petition in bankruptcy was filed herein, the City recognized only the bankrupt, or its assignees, as the owners of this fund. William E. Lahey had not, up to that time, made any claim thereto, but for the first time asserted any claim to the fund after the petition in bankruptcy herein was filed.

█ Under the facts shown in this case, the possession of the fund was constructively in the bankruptcy court, which had summary jurisdiction to determine all claims. May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870; In re Quan Weing et al., 2 Cir., 104 F.2d 112; In re Weston et al., 2 Cir., 68 F.2d 913, 98 A.L.R. 319; In re Kerr, D.C., 5 F.Supp. 898; In re Jefferson Homes, D.C.E.D.N.Y., 40 F.Supp. 519, my opinion dated August 29th, 1941.

The attorney for William E. Lahey attempts to distinguish the case at bar from the decision In re Jefferson Homes, supra, but, in my opinion, without success.

In that case some part of the award, in any event, appeared to be coming to the estate, and that was so here, as there was a balance of $296.90 over all assignments coming to the estate, no claim on the part of William E. Lahey having been made at that time.

In the case at bar the sewer assessment had been levied by order of the Court, and paid by the Bankrupt through its agent, and by local law there was to be returned to the one who paid the assessment 30% thereof.

William E. Lahey places his reliance on the dictum of In re Interocean Transp. Co., D.C., 232 F. 408, decided 1916, by Judge Learned Hand, then a District Judge, who, six years later, in deciding the same question in the case of In re Hoey, Tilden & Co., D. C., 292 F. 269, 272, declined to follow the Interocean Transportation Co. case, supra, that is, he declined to follow the dictum of the earlier case, and said: "While title relates back only to adjudication, the analogy, of Farmers' L. & T. Co. v. Lake St. R. Co., supra [177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667], seems to be a sound one and to give primary jurisdiction to the bankruptcy court to determine all claims not only to property which is in the bankrupt's possession but to such as the court might have seized when the petition was filed. * * * On filing the petition the bankruptcy court could therefore have compelled the ·Stock Exchange, which held the balance for the bankrupt without adverse claim, to pay that balance to itself, and could have enjoined any person from questioning that payment. This, it seems to me, is equivalent to saying that the bankruptcy court then came into constructive possession of the fund and that the adverse claim was not of one who was in possession but that it was against the possession of the court."

In subsequent cases it has been pointed out that the Interocean Transportation Co. case, supra, is not now regarded as the law. In re Zimmermann et al., D.C., 4 F.Supp. 801, affirmed 2 Cir., 66 F.2d 397; In re Goldman, D.C., 5 F.Supp. 973.

The Bankruptcy Court had jurisdiction in summary proceedings, and the special appearance of the attorney for William E. Lahey was properly overruled by the Referee.

■ The Trustee, and not William E. Lahey, was entitled to the refund. In re Calamus Ave., etc. (Roler), Sup., 28 N.Y.S. 2d 146. That case is directly in point.

The Court, at page 147 of 28 N.Y.S.2d said: "On April 17, 1936, the petitioner was the owner of the property described in the petition. On that day she conveyed the premises to Tillinger Building Corporation while certain assessments were liens thereon, and as part of the adjustment on the closing allowed the purchaser the amount of the assessments. Such purchaser did not pay the assessments but conveyed the premises to Dunwell Contracting Corporation, which in turn received an adjustment to the extent of said assessments. Thereafter, Dunwell Contracting Corporation paid the assessments to the City of New York. Subsequent to the payment the board of estimate and apportionment adopted a resolution placing 50 per cent. of the assessments upon the City of New York, and directed the city treasurer to make refunds to those owners who had paid more than 50 per cent. of the assessments. Hence this application poses the question, who is entitled to the 50 per cent. refund? The petitioner, not having paid the assessments to the City in the first instance, is not entitled to the refund in this proceeding."

Another case exactly in point is Ackerman v. Progress Improvement Co., Supreme Court Kings County #6074/ 1938, New York Law Journal July 21, 1938, in which Justice Steinbrink said:

"The action herein is for a judgment increasing the principal of a purchase money bond and mortgage executed by the defendant and delivered to the plaintiff. The facts appearing in the complaint are as follows:

"The plaintiff contracted to sell to defendant a certain parcel of real property, the contract providing for execution and delivery by the defendant of a purchase money bond and mortgage in the sum of $3,750.,

'minus the aggregate sums to which the purchaser shall be entitled as allowance for accrued taxes and assessments with penalties thereon up to the date of closing of title hereunder'. At the date of closing of title the accrued taxes and assessments, with penalties, aggregated the sum of $1,900.62. The principal of the bond and mortgage was accordingly fixed at $1,849.38. Thereafter the City of New York reduced the assessment against the mortgaged premises by the sum of $438. and it is to the extent of this reduction, together with the proportionate reduction in the penalties, that the plaintiff seeks to have the principal of the bond and mortgage increased.

"The rights of the parties were defined and limited by the terms of the contract. By the provision above quoted, the language of which is free from ambiguity, the amount of the principal of the bond and mortgage was fixed upon the basis of the state of facts asserted on 'the date of closing of the title'. Nothing thereafter occurring can affect the rights thus definitely fixed. The partial satisfaction of the assessment effected by the City of New York confers no benefit on the plaintiff, whose rights under the contract were already completely exhausted."

The motion was denied.

The following cases are directly in point: People ex rel. Austin v. Cooper, 30 Hun 383; Parker-Washington Co. v. Kansas City, Missouri, et al., 8 Cir., 40 F.2d 232; James v. Schmidt, City Ct., 2 N.Y.S. 649; Allez v. Morales, 111 Misc. 139, 180 N.Y.S. 915, 917; Realty Federation of New York v. New York Operating Co., 79 Misc. 611, 140 N.Y. S. 512; Vorchetto v. Sappenfield, 223 Mo. App. 460, 14 S.W.2d 685.

See also In re Oswegatchie Chemical Products Corporation, 2 Cir., 279 F. 547, certiorari denied 259 U.S. 580, 42 S.Ct. 464, 66 L.Ed. 1073.

As opposed to these authorities there is cited, on behalf of William E. Lahey, the two following decisions, made by Mr. Justice Lockwood in the New York Supreme Court, Kings County, Second Judicial District: In re World's Fair and Development Corporation (99th (Marlowe Ave.-Oxford-Cambridge) St. from Corona (Newtown) Ave. to Queens Blvd.; Strong Ave. (Strong-Lincoln St.) from 99th St. to 100th (Oxford) St.,[1] June 16, 1939; Matter of East 46th and East 49th Street, Avenue I

---

[1] No opinion for publication.

to Avenue J (Navarre Building Corporation),[1] November 15, 1940.

In both of those cases on the sale of the real property in question, to the owner in question, there had been a deduction made from the selling price on the closing of the title the amount of unpaid assessments then liens with interest and penalty, and a subsequent action by the City directing a payment to the person who paid or caused to be paid the assessment in question to the City. Such payment was made or caused to be made by the owner in question, but the Court ordered payment to the seller on the theory that payment of the award to the owner in question, who paid or caused the assessments to be paid to the City, would effect a reduction to that extent of the purchase price to the detriment of the seller.

These cases are distinguishable from the case at bar, if for no other reason than because in them there was no bankruptcy intervening, but even if there had been no bankruptcy if William E. Lahey had any claim, it could not amount to more than a claim against the purchaser, or a vendor's lien for an unpaid portion of the purchase price, either of which would have been inferior to the claim of the Trustee in Bankruptcy. In re Oswegatchie Chemical Products Corporation, 2 Cir., 279 F. 547, certiorari denied 259 U.S. 580, 42 S.Ct. 464, 66 L.Ed. 1073.

In the case at bar there is no claim that any of the creditors had notice of any unpaid portion of the purchase price, and the mortgage for the balance was satisfied of record.

In any event, if the World's Fair or Navarre cases, supra, are not distinguishable from the case at bar, they are against the weight of authority of the cases cited, supra, decided in both the Federal and State Courts, particularly in the State of New York, one of which cases Ackerman v. Progress Improvement Co., supra, was decided by another Justice of the New York Supreme Court in the Second Judicial District, in all of which cases the principle is established that any events which occur subsequent to the transfer of title, do not concern the seller.

■ The Referee did not err in receiving in evidence the deeds to William E. Lahey, showing that when he purchased the real property, two weeks before he sold it to the bankrupt, he purchased it subject to the unpaid assessments in question, as it was clearly relevant (In re Calamus Ave., etc. (Roler), supra), and especially in view of William E. Lahey's claim that "he, in fact, bore the expense of * * * the entire sewer assessment, and caused it to be paid", and his further claims that payment of the refund to the Trustee would be an unjust enrichment "at the expense and to the detriment of Lahey."

■ Likewise was the evidence of what the City did in acting upon the bankrupt's application for the refund properly received by the Referee as it was relevant and material in showing that William E. Lahey had made no claim prior to the bankruptcy.

The motion is denied and the petition for review is overruled and dismissed, and the order of the Referee, dated December 1, 1941, which it is sought to review herein, is confirmed.

---

[1] No opinion for publication.